

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL .

Honorable Weaver H. Baker, Chairman
Board of Control
Austin, Texas

Dear Sir:

Opinion No. 0-5692
Re: Legality of the payment
of salary to Dr. David Wade
Superintendent of the Galveston
State Psychopatic Hospital.

In our opinion No. 0-5657 we held that the
Superintendent of each State Hospital is required by law
to live at the Hospital of which he is superintendent, and
that under the general provisions of the current biennial
appropriation to Eleemosynary institutions the willful
failure or refusal of the superintendent of a State
Hospital to reside at the Hospital will work a forfeiture
of his right to draw the salary attached to such position.
In that opinion, however, we further said:

"This opinion, of course is based upon the
assumption that the State has provided for, and
made available to, the Superintendent suitable
living quarters for himself and his family at
the State Hospital of which he is Superintendent."

You have now asked for an interpretation of that
opinion as applied to the following statement of facts and
questions (quoting from your letter).

"There is located at Galveston, Texas, the
Galveston State Psychopathic Hospital, in which
there has been hospitalized approximately 100
patients, for a period of several years preced-
ing the month of August, 1943. The institution
is comprised of a large fire-proof hospital unit,
garages, and storeroom, and two old dormitories
of wood construction.

Honorable Weaver H. Baker        page 2

"In the hospital, there are two small apartments occupied by doctors who are continually on duty and available for immediate call to the patients. The wooden buildings have been occupied as dormitories for attendants.

"On July 27, 1943, Galveston was visited by a hurricane that destroyed several million dollars worth of property. The wooden dormitories, above referred to, were injured to the extent that our engineers advised us they were irreparable. After the storm the attendants and other personnel were moved into the hospital with the approximately 83 patients being hospitalized at the time, creating a very undesirable situation. Considerable damage was done to the main hospital unit that required immediate repairs. The Board dispatched its engineer, Hood Pitts, to the institution immediately thereafter, who reported the damage.

"The Board, in company with Dr. Charles W. Castner, visited the hospital on August 2, 1943, and after advice of our Superintendent Dr. David Wade, and our Eleemosynary Superintendent, Dr. Charles W. Castner, and after observing the damage of the storm, concluded to close the institution for repairs and to move the patients, to other mental hospitals in Texas, where we had ample accommodations, or discharge them as the Superintendent doctor recommended.

"There has never been at any time in the history of the institution a home for the Superintendent, and there was not at the time of the storm, and there exists none at this time. At least one Legislature turned down a request for an appropriation to build a Superintendent's residence.

Honorable Weaver H. Baker    page 3

"Dr. L. P. Brown, a former Superintendent, now at the San Antonio State Hospital, lived at 4702 Avenue O. Dr. David Wade, Superintendent at the time of the storm, and who will be kept in such capacity until November 1, 1943, lived at 1212 Avenue O. The place where he lived was rendered untenable by the storm, and his furniture was severely damaged as a result thereof.

"In view of our appraisal of the situation, and for the aforesaid reasons, the Board directed Dr. David Wade to remain on duty until such time as the patients could be moved to other hospitals, or discharged, as each case desired, and to generally wind up the affairs of the institution, including the payment of the bills, and the performance of other duties incident to the Board's action.

"It was necessary for us to keep Dr. Wade in his said capacity for the months of September and October of 1943 in the new fiscal year, during which time he has been on the payroll of the Galveston State Psychopathic Hospital as Superintendent thereof, and has drawn his salary for September, 1943, and will be placed on the payroll for October, 1943, for the appropriated salary. The Board found it necessary after Dr. Wade completed as much of these duties at Galveston as was possible, to move him to Austin, where he has been engaged in such service, and where he daily attends to some phase of his work in his present capacity. We still maintain a limited personnel at the institution for maintenance and repair purposes in view of the state's large investment at the place and in view of the fact that it has only been temporarily abandoned. We have used the doctor in an advisory capacity in other matters at intervals when he was not engaged in his official capacity. However, his primary function, and the reason we have kept him, has been to assist in the liquidation of the affairs of the Galveston State Psychopathic Hospital. We cannot completely get the job done for some

Honorable Weaver H. Baker    page 4

months, but we will take care of the unfinished business of the Galveston State Psychopathic Hospital here in the office with other personnel after November 1, 1943.

"Will you kindly let us know whether or not, under the aforesaid statement of facts, and under the terms of the above opinion, we legally paid Dr. Wade his salary as Superintendent of the Galveston State Psychopathic Hospital for the month of September, 1943, and whether or not we can legally pay him his salary for October, 1943, in such capacity."

From the above statement of facts it appears that Dr. Wade has been prevented from residing at the Galveston Psychopathic Hospital by the failure of the State to provide suitable living quarters for him at said hospital and that, at the end of this month, he will have actually performed fully all his other duties as Superintendent of the Galveston State Psychopathic Hospital throughout the month of September and October, 1943.

Under such facts and our conclusions drawn therefrom, as stated above, it is our opinion that the payment to Dr. Wade of his salary as Superintendent of the Galveston State Psychopathic Hospital for months of September and October, 1943, is legal.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED   1943

FIRST ASSISTANT

W. R. Allen

By

W. R. Allen
Assistant

WRA:ned
J.C.C.



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN